Skelton, *et al.*, *vs.* The Ordinary, etc.

1. An order of the Court of Ordinary, authorizing a guardian to invest the money of his wards in land, if procured to be passed by the guardian fraudulently, is a mere nullity, and may be so treated by third persons in any Court, whenever attempted to be used as a valid judgment.

2. When a guardian, authorized to invest the money of his wards in land, gives up to one, from whom he had previously purchased, a deed of land, to be cancelled, and takes a second deed from such person to himself, as guardian, such second deed is not necessarily void, but, under some circumstances, might be held good.

3. But, when the transaction is not ratified by the wards, nor its enforcement asked by them, and the transaction is otherwise objectionable, the deed is void, and may be so treated.

4. When the guardian is authorized by the Ordinary to invest the funds of his wards in land, he is bound to make such investment in good faith for their benefit, and if he fails to do so, the order of the Ordinary will not protect him from liability for the funds.

5. It is questionable whether the Ordinary has power to authorize a guardian to invest funds of the wards in land, when the wards own no slaves to put on and cultivate the land to be purchased.

Action on a Guardian's Bond, in Webster Superior Court. Tried before Judge PERKINS, at the September Term, 1860.

This was an action brought by David G. Rogers, Ordinary of Webster county, for the use of Obed. C. McGrady, guardian of Edward McGrady, against William Skelton as principal, and John V. Bigham, and Sampson Bell, as executor of Eason B. Sweeny, deceased, as securities.

The object of the suit was to recover a sum of money claimed to be due from Skelton, as former guardian of Edward McGrady, to the said Obed. C. McGrady, the present guardian, and for which Skelton and his securities, Bigham and Sweeny, were liable on the guardian's bond of Skelton.

The testimony on the trial in the case, in the Court below, was as follows:

The plaintiff read in evidence the bond given by Skelton, as guardian of Edward McGrady, and Sarah A. McGrady, which was dated the 3d of March, 1856, and signed by Skelton, as principal, and Bigham and Sweeny as securities.

The plaintiff also proved by the admission of Skelton, that, as guardian of the plaintiff and his sister, he had on hand, belonging to them, the sum of $800 00, on the 1st day of July, 1857.

Plaintiff then closed his case.

Defendants then read in evidence, an order of the Court of Ordinary of Webster county, passed at the June Term, 1857, reciting: "that Skelton had in hands $800 00 in cash and available assets belonging to Edward and Sarah A. McGrady, orphans of William B. McGrady, deceased, and that said Skelton, as guardian of said minors, desired to lay out, and invest said money in real estate for their use and benefit; and authorizing the said Skelton thus to invest the fund, taking the titles thereto to himself as guardian, in conformity with the statute approved 17th of February, 1854.

The defendants also read in evidence a deed from Benjamin Griffin, to the said William Skelton, guardian of Edward and Sarah A. McGrady, dated the 6th of July, 1857, recorded

the 9th of March, 1858, and conveying lot of land No. 187, in the 25th district of originally Lee, then Webster county; and proved by S. McGrady that the land was worth from $800 00 to $1,000 00.

·The plaintiff then proved in rebuttal, that the order, authorizing an ·investment of the funds by the guardian in land, was revoked and set aside by the same Court at the July Term, 1857, which was resisted by Skelton, and from which he appealed to the Superior Court, and on said appeal the judgment was affirmed.

The plaintiff also proved, that Skelton had bought the land from Griffin on his own account and paid him for it in the early part of the year 1857, and was living on it; that he had spent the money of his wards, and, pursuant to the suggestion of Bell, one of the defendants, he procured Griffin to destroy the deed made by him to Skelton for the land, and make another deed to him as guardian; that the land was sold at sheriff's sale, in September, 1858, under a *fi. fa.* in favor of Jones and Richardson, founded on a judgment dated in 1858, and one in favor of G. W. Rankin, founded on a judgment dated in April, 1857, both judgments against said Skelton; that said land was bought at said sale by one William P. Cato, who was then in possession of the land.

It was also proven, that on the day the second order of the Court of Ordinary was passed, rescinding the first order, Skelton had said deed from Griffin to him as guardian, and showed it to the Ordinary as a reason why the order should not be rescinded. It was also proved, that the sale of the land was had under the *fi. fa.* in favor of Jones & Richardson, and the entry of the sale of the land was made on the Rankin *fi. fa.* in order to dispose of the levy on it.

The testimony being closed, the presiding Judge charged the jury as follows:

"If the jury believe that the order of the Ordinary authorizing Skelton to invest $800 00 in land, was procured by fraud, then it might be attacked in any Court, even collaterally, and treated as null, and all acts of Skelton, done by virtue of it, are void. That if Griffin had sold Skelton the

land, and made him a deed thereto, before the order was passed, the title to the same was in Skelton, and no cancellation or destruction of the first deed and making of another deed to Skelton as guardian, could divest his individual title, and be an instrument for the benefit of the ward; the last deed was void, and conveyed no title to Skelton as guardian. That Skelton was bound in good faith to make the investment in land, and in doing so, if he failed to act in good faith for the promotion and advancement of the best interest of the children, then the plaintiff was entitled to recover the amount shown to be in Skelton's hands."

The jury returned a verdict in favor of the plaintiff for $400 00, with interest from the 1st day of July, 1857.

The writ of error in this case is prosecuted to reverse the judgment, on the ground that the presiding Judge erred in said charge to the jury, and also that the verdict is contrary to law.

McCay & Hawkins, for plaintiff in error.

Wimberly, for the defendant in error.

*By the Court.*—Lyon, J., delivering the opinion.

William Skelton, one of the plaintiffs in error, as the guardian of Edward McGrady and Sarah Ann McGrady, minors, had in his hands the sum of $800 00, belonging to his wards jointly, and having been removed from the guardianship as to Edward McGrady, and Obed. C. McGrady appointed guardian for said Edward in place of Skelton, this action was brought by the Ordinary for the use of Obed. C. as such guardian, for the recovery of that part of the sum in the hands of Skelton as former guardian that belonged to the ward Edward, against Skelton and his sureties on his guardian bond. The defendants to that action and plaintiffs here, in defence thereto, put in evidence an order of the Court of Ordinary of Webster county, passed at the June Term, 1857, authorizing Skelton as guardian to invest said sum of $800 00 then in his hands, as guardian of said mi-

nors, in land, and to take the title thereto in his name as guardian, and a deed from one Benjamin Griffin to him as guardian, for lot of land No. 187, in 25th district, Webster county, dated 6th of July, 1857, with proof that the lot was worth $800 00 or $1,000 00. It appeared, from the proof, that the lot of land was not purchased by Skelton with the money of the wards under the order of the Ordinary, but had been long before the granting of the order purchased by Skelton from Griffin and paid for in negroes; that he was in possession of the land as his own from some time in 1856, held Griffin's deed to him individually for the land, which deed had been by him given up to Griffin and destroyed, and this deed to him as guardian made by Griffin in lieu of it.

It also appeared that at the time of this cancellation and reconveyance, there were judgments against him, Skelton, and that the land was subsequently sold under an execution against Skelton, obtained in 1858, and the proceeds applied, in part at least, to judgments older than the deed from Griffin to Skelton as guardian, at which sale one Cato was the purchaser, and who had gone into the possession of the land under such purchase.

Upon these facts the Court charged the jury : ·

1. That if they believed the order of the Ordinary authorizing Skelton to invest $800 00 in land, was procured by fraud, then it might be attacked in any Court, even collaterally, and treated as null, and all acts of Skelton done by virtue of it were void.

2. That if Griffin had sold Skelton the land and made him a deed thereto before the order was passed, the title to the same was in Skelton, and no cancellation or destruction of the first deed and making of another deed to Skelton as guardian, could divest his individual title and be an investment for the benefit of the wards; the last deed was void and conveyed no title to Skelton as guardian.

3. That Skelton was bound in good faith to make the investment in land, and if in doing this he failed to act in good faith for the promotion and advancement of the best interest

of the children, then the children were entitled to recover the amount shown to be in Skelton's hands.

To these several charges plaintiffs in error excepted.

Upon the first proposition stated in the charge, we agree with the Court below; that is, if the order authorizing the investment was procured by fraud, then it could be impeached collaterally, and all acts done by Skelton under it were void.

1. All judgments, orders, decrees, or contracts, of whatever kind, obtained or procured by fraud, are mere nullities, and may be so treated by third persons whenever and wherever they are sought to be used as valid judgments, etc. ' 1 Green. Ev., sec. 284; Chitty on Contracts, 3; Moore vs. Bowmaker, 7; Taunt., 9; Fermor's case; '2 Coke, 210; 1 Phillips' Ev., 341.

2. We are not so well satisfied of the soundness of the second proposition in the charge; that is, that the second deed made by Griffin for this lot to Skelton, as guardian, was void and conveyed no title, notwithstanding the cancellation and destruction of the first deed; for, although it is very true, that this is a very irregular and imperfect mode of conveyance of land, to say the least of it, still, if this had proved a profitable operation for the wards, the rights of third persons not intervening, we are not so sure but that a Court of Equity, on the application of the wards, would not give effect to the transaction 'for their benefit, treating the second deed of Griffin made with the assent and by the direction of Skelton as the deed of Skelton.

3. But it is altogether unnecessary to discuss this question, as the wards have not ratified the transaction or asked for its enforcement, without which it is void and of no effect as to them; and in that sense there is no error in the charge, and certainly none in any sense, under the facts of this case, that prejudices the plaintiffs in error.

4. To the third position assumed by the charge, we give our unqualified approbation as the law of the case; that is, "that Skelton was bound to make the investment in land in good faith, and if, in making the investment, even with the sanction of the Ordinary, he failed to act in good faith for

the promotion and advancement of the best interest of the children, then the plaintiffs were entitled to recover."

The facts show that Skelton did not invest the money of his wards in this land, but that he, under color of this order, substituted the lot, or intended to do so, by this clandestine arrangement between himself and Griffin, which belonged to himself, for the money of his wards that he had previously applied to his own private use. And this was a complete reply to his entire defense.

5. It is very questionable whether this order of the Ordinary authorizing the investment, could have protected the guardian under any circumstances, however fair or in good faith he may have acted; for the Act of 17th February, 1854, under which the Ordinary acted, gives to the Ordinary no such power. That act authorizes the guardian, with the approval of the Ordinary, to invest surplus money of the wards in slaves—not land. Pam. Act of 1853–54, page 35. Neither can such power be implied from the Act of 19th of December, 1829. Cobb Dig. 327. That Act was intended to authorize guardians, under an order of the Ordinary, to keep the slaves of minors together, and have them employed in such agricultural or other operations as the guardian might deem manifestly expedient, and when the minor had no land for that purpose, the guardian is authorized by that act, with the approval of the Ordinary, to invest disposable funds in the purchase of such reasonable portion of land as may be necessary for the purposes of the act. When the minor has no slaves to keep together or employ in the cultivation of the land, as appears to be the fact in this case, there can not be the slightest pretext for the investment of money in land. However, as it is not necessary in the present case, we will not say how far such an order, under those circumstances, would or would not protect a guardian in the investment of his wards' funds in land, when made in good faith. We only say that that is questionable.

Judgment affirmed.